*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

PEOPLE OF THE STATE OF MICHIGAN,

UNPUBLISHED
July 25, 2024

Plaintiff-Appellee,

v

No. 364852
Berrien Circuit Court
LC No. 1997-403846-FC

MARK ANTHONY ABBATOY,

Defendant-Appellant.

Before: BOONSTRA, P.J., and FEENEY and YOUNG, JJ.

PER CURIAM.

This case involves whether the trial court abused its discretion when resentencing defendant, Mark Anthony Abbatoy, who was juvenile at the time of his offense, to serve the maximum-possible term-of-years sentence. In October 1997, a jury convicted Abbatoy of felony murder, MCL 750.316(1)(b), for beating Connie DePalma to death with the help of DePalma's son. Abbatoy was initially sentenced to life imprisonment without the possibility of parole. However, following the United States Supreme Court's decisions in *Miller v Alabama*, 567 US 460, 465; 132 S Ct 2455; 183 L Ed 2d 407 (2012), and *Montgomery v Louisiana*, 577 US 190, 208-209, 136 S Ct 718; 193 L Ed 2d 599 (2016), the trial court held a *Miller* hearing, denied the prosecutor's motion for life without parole, and resentenced Abbatoy in 2021 to a term of 40 to 60 years' imprisonment.

This Court subsequently vacated Abbatoy's sentence and remanded for another resentencing because the trial court failed to consider Abbatoy's youth as a mitigating factor, as required by *People v Boykin*, 510 Mich 171; 987 NW2d 58 (2022). *People v Abbatoy* ("*Abbatoy I*"), unpublished per curiam opinion of the Court of Appeals, issued August 18, 2022 (Docket No. 357766), pp 1-2. On remand, the trial court again resentenced Abbatoy to a term of 40 to 60 years in prison. Abbatoy now appeals his second resentencing and argues that the trial court again failed to properly consider his youth at the time of the offense as a mitigating factor. Abbatoy further contends that the trial court overemphasized the nature of the offense while imposing a maximum term-of-years sentence, particularly when every other sentencing factor weighed in favor of mitigation. He also requests that any further resentencing be before a different judge.

*Boykin* requires that the trial court consider a juvenile defendant's youth, and a court need not articulate on the record its particular bases for doing so. While there is no particular articulation requirement related to the consideration of youth, there continues to be a requirement that sentencing judges justify their sentence sufficiently to allow for appellate review. *People v Copeland*, ___ Mich App ___ , ___ ; ___ NW 3d ____ (2024) (Docket No. 363925); slip op at 12, citing *Boykin*, 510 Mich at 194 ("The trial court was only required to justify its sentence in a manner sufficient for appellate review."). We do not take issue with the amount of justification provided by the trial court here. Nevertheless, the justification provided demonstrates that the trial court affirmatively misunderstood this Court's prior ruling and instruction on remand, and erred in applying *Boykin* to the instant facts. We therefore vacate Abbatoy's sentence and remand for resentencing consistent with this opinion.

## I. BACKGROUND

This Court previously summarized the facts underlying Abbatoy's conviction as follows:

This case arises out of the beating death of the victim on May 7, 1997, in Bridgman, Michigan. According to trial testimony, on that afternoon, [Abbatoy] was with [Anthony] DePalma. They were both 17 years old. Earlier in the day, [Abbatoy] told DePalma that he planned to run away to California, and DePalma suggested that they steal his mother's car and drive there. DePalma went into his house and stole the victim's car keys, then went to a nearby restaurant with [Abbatoy] to discuss their plan. Assuming that the victim would immediately call the police when [Abbatoy] and DePalma took her car, the two planned to knock her out with a shovel so they could be farther away before the authorities were notified of the theft. With this as the plan, [Abbatoy] and DePalma returned to DePalma's house and found the victim in the garage. [Abbatoy] hit the victim in the head with a shovel three times, and she fell down to the ground. Believing the victim was knocked out, [Abbatoy] left the garage, but then heard a noise and realized that the victim had gotten up and went into the house. [Abbatoy] chased after the victim, kicked down the door to the house, and followed the victim upstairs, where he saw her on the phone. Afraid she was calling 911, [Abbatoy] ripped the phone off the wall, then repeatedly hit the victim on the head with the shovel until she fell to the floor. [Abbatoy] maintained at both his trial and [a] *Miller* hearing that the victim was still breathing when he left her. At [Abbatoy]'s trial, he testified that he laid the shovel next to the fallen victim and went downstairs, and told DePalma that if he wanted his mother dead, he would have to do it himself. According to [Abbatoy], after that, DePalma went upstairs, and returned a short time later with the shovel. The forensic pathologist at [Abbatoy]'s trial testified that the victim's cause of death was cranial cerebral trauma (severe head injuries). The victim suffered 10 lacerations on the back and top of her head, and three of those wounds penetrated her skull.

[Abbatoy] and DePalma were tried at the same trial with separate juries. They were both convicted of first-degree felony murder and sentenced [to life imprisonment without the possibility of parole]. [*Abbatoy I*, unpub op at 2.]

In 2016, following *Miller* and *Montgomery*, the prosecution moved to resentence Abbatoy to life without parole. After holding a two-day *Miller* hearing, the trial court denied that motion and set a date for resentencing. The trial court resentenced Abbatoy to 40 to 60 years in prison.[1] This Court later vacated Abbatoy's sentence and remanded for resentencing because "although the trial court was not required to articulate on the record how [Abbatoy]'s youth affected its decision," it was "not apparent that the trial court considered [Abbatoy]'s youth at the time of the offense . . . , and even if the court did, it is not apparent that the court treated [Abbatoy]'s youth as a mitigating factor." *Abbatoy I*, unpub op at 1-2.

The panel in this Court's prior opinion observed that "the trial court focused almost exclusively on the horrific nature of [Abbatoy]'s crime, and nothing about that discussion suggested that the trial court was considering [Abbatoy]'s youth and its attendant circumstances." *Id*. at 4. Accordingly, this Court vacated Abbatoy's sentence and remanded "for resentencing in light of *Boykin*." *Id*. at 5.

The panel also addressed other claims that Abbatoy raised on appeal because those claims were "likely to arise again during his resentencing." *Id*. at 5. First, the panel considered Abbatoy's argument that the evidence did not support the trial court's conclusion that he inflicted the fatal blows to the victim. The panel disagreed, concluding that although "the police officer who testified on behalf of the prosecution at [Abbatoy]'s *Miller* hearing testified that he could not determine who issued the blow that resulted in the victim's death, there [was] evidence in the record supporting the trial court's conclusion that [Abbatoy] inflicted a majority of the blows that resulted in the victim's death." *Id*. Finally, the panel rejected Abbatoy's argument that the trial court erred by imposing a sentence with a minimum term that was 13 years longer than the sentence imposed on DePalma because they were similarly situated codefendants. The panel explained that Abbatoy was not similarly situated to DePalma because the court reasonably found that Abbatoy inflicted the majority of the blows that caused the victim's death. *Id*. at 6.

On remand, the trial court largely relied on its initial resentencing analysis from 2021, elaborating that, "I absolutely did consider [Abbatoy's] age as a mitigating circumstance, . . . and I believe I've complied with the requirements of the Court of Appeals['] opinion on remand." The court stated, "The Court of Appeals, by my reading, with the exception of this narrow issue of articulating further on the record that I considered [Abbatoy's] youthfulness as a mitigating factor, they found that what I did was proper, so I'm going to rely upon that." The trial court then resentenced Abbatoy to the same 40-to-60-years term of imprisonment. This appeal followed.

## II. STANDARD OF REVIEW

"Sentencing decisions are reviewed for an abuse of discretion." *Boykin*, 510 Mich at 182. "An abuse-of-discretion standard recognizes that there may be more than one principled outcome and the trial court may not deviate from that principled range of outcomes." *Id*. In addition, "[a]ny fact-finding by the trial court is to be reviewed for clear error, any questions of law are to be reviewed de novo, and the court's ultimate determination regarding the sentence imposed is to be

---

[1] DePalma, who was resentenced by a different trial court judge, was sentenced to 27 to 60 years' imprisonment. He was released in September 2020.

reviewed for an abuse of discretion." *People v Hyatt*, 316 Mich App 368, 423; 891 NW2d 549 (2016). "A trial court's factual finding is clearly erroneous if the reviewing court is left with a definite and firm conviction that the trial court made a mistake." *Id*. "A trial court necessarily abuses its discretion when it makes an error of law." *People v Wiley*, 324 Mich App 130, 165; 919 NW2d 802 (2018).

## III. ANALYSIS

Abbatoy argues that the trial court (1) again failed to properly consider his youth at the time of the offense as a mitigating factor, and (2) disproportionally focused on the nature of the offense while imposing a maximum term-of-years sentence particularly when every other sentencing factor was mitigating. He also seeks resentencing before a different judge. Because the record shows that the trial court affirmatively misunderstood this Court's prior holding and instruction on remand, and erred for a second time in applying *Boykin* to the instant facts, we vacate Abbatoy's sentence and remand for resentencing.

## A. VACATE AND REMAND FOR RESENTENCING

This Court previously remanded this case to the trial court for resentencing. In so doing, this Court said: "Defendant's sentence is vacated, and we remand for resentencing." *Abbatoy I*, unpub op at 6. Nevertheless, at the outset of Abbatoy's second resentencing, the trial court observed that this Court's prior opinion "*affirmed* [the trial court's] sentence . . . of Mr. Abbatoy[] to a term of years of 40 to 60[ years' imprisonment], with the somewhat narrow exception of seeking to have the [trial court] further clarify that, in fact, [it] considered [Abbatoy]'s age or youthfulness as a mitigating factor." (Emphasis added.) But by vacating Abbatoy's sentence in the prior opinion, this Court did the opposite of affirming it. The trial court's misunderstanding echoed throughout the resentencing proceeding.

Defense counsel requested that the trial court address on the record "its analysis of the *Snow* factors, and what is considered mitigating, and what is considered aggravating . . . ."[2] Instead, the trial court merely incorporated by reference its initial reasoning from Abbatoy's first resentencing, again stating a belief that this Court's opinion vacating Abbatoy's sentence and remanding for resentencing was instead affirming that what the trial court did prior was proper:

> I did that back in June of 2021 . . . . I don't believe I need to restate myself.
>
> \* \* \*
>
> I'm not going to restate what I previously—I—I incorporate it by reference completely, so I—I don't think it's fair to—or productive to have me go back through what I did [before], quite frankly. The Court of Appeals, by my reading, with the exception of this narrow issue of articulating further on the record that I

---

[2] See *People v Snow*, 386 Mich 586, 592; 194 NW2d 314 (1972).

-4-

considered [Abbatoy's] youthfulness as a mitigating factor, they found that what I did was proper, so I'm going to rely upon that.

* * *

I'm simply trying to comply with the order of the Court of Appeals remanding [this case] back to me, so because there were multiple issues that they found were covered properly . . . , I don't feel the necessity to restate that in its entirety.

The trial court incorrectly believed this Court affirmed Abbatoy's original 40- to 60-year sentence and merely sought a rearticulation or "narrow" clarification in light of *Boykin*. Instead, this Court in its prior opinion vacated the sentence and remanded for a *full resentencing* under *Boykin*. This Court also never commented on the general correctness of the original 40- to 60-year sentence, particularly regarding the trial court's initial analysis of the involved *Snow* factors. See *People v Snow*, 386 Mich 586, 592; 194 NW2d 314 (1972). Rather, this Court directly addressed two limited issues, rejecting Abbatoy's arguments that (1) the evidence did not support that he inflicted the fatal blows to the victim, and (2) the trial court erred by imposing a longer minimum sentence for Abbatoy than his similarly situated codefendant, neither of which are at issue here. See also *Abbatoy I*, unpub op at 2 ("[Abbatoy] raises a third argument—that the trial court failed to consider relevant sentencing factors when it resentenced [him]—but we decline to address this argument in light of our holding that [Abbatoy] must be resentenced.").

Thus, the trial court was obligated to fully resentence Abbatoy while considering his youth as a mitigating factor under *Boykin*, not incorporate by reference the legally inadequate explanations from the initial sentencing. For this mistake of law, alone, we hold that the trial court abused its discretion. *Wiley*, 324 Mich App at 165. Nevertheless, we address a separate misunderstanding of the law and clarify how trial courts are to consider youth at sentencing.

## B. APPLYING YOUTH AND ITS ATTENDANT CIRCUMSTANCES

Abbatoy argues that the trial court failed to properly consider and articulate on the record the impact of Abbatoy's youth on the *Miller* and *Snow* factors. Here, it is not a lack of explanation we take issue with, as we cannot following *Boykin*. We also do not, as the dissent suggests, "come[] dangerously close to saying that a defendant's youth *must* result in a sentence of less than the maximum term of years permitted by MCL 769.25 (that is, that a defendant's youth must in fact result in a minimum term of year sentence of less than 40 years, or else the trial court obviously failed to consider youth's mitigating potential in sentencing)." *Ante*, slip op at 3. Instead, we take issue with the proverbial lens through which the trial court conducted its review.

### 1. WHAT *BOYKIN* SAYS

In *Boykin*, the Michigan Supreme Court considered the cases of two people who were children at the time they committed or participated in a murder. First, 17-year-old Demariol Boykin fatally shot and beat an individual who had been in a fist fight with his brother. Second, 16-year-old Maurice Tate overhead a disparaging remark about a gang Tate belonged to. After making a quick plan with other members of his gang, Tate led the person who made the remark outside where that person was shot, repeatedly and fatally. *Boykin*, 510 Mich at 178-182. The

prosecutor did not move for life without parole in either Boykin's or Tate's case; however, Boykin, Tate, and Abbatoy ultimately find themselves in the same procedural posture: a term-of-years resentencing hearing. *Id.* That is, "if the prosecution does not move for life without the possibility of parole *or if the trial court decides such a sentence is disproportionate*," the result is a hearing where the trial court must choose a minimum sentence between 25 and 40 years and a maximum of 60 years. *Id.* at 191 (emphasis added); MCL 769.25(4).

The *Boykin* Court held two things about these term-of-years sentencing hearings: (1) "consideration of youth and its attendant circumstances is [] required," and (2) "this consideration need not be articulated on the record." *Id.* at 188, 193. The *Boykin* Court explained that at a term-of-years sentencing, the trial court must arrive at a sentence that is proportionate and, to do so, should consider the "four basic sentencing considerations" dubbed the *Snow* factors: (1) reformation of the offender; (2) protection of society; (3) disciplining of the wrongdoer; and (4) deterrence of others from committing like offenses. *Id.* at 188, citing *Snow*, 386 Mich at 592. The *Boykin* court stated that youth would affect each of these considerations:

> For example, since a greater possibility exists that a minor's character deficiencies will be reformed, the mitigating qualities of youth necessarily transform the analysis of the first *Snow* criterion. . . . Next, because youth have a heightened capacity for change relative to adults, the needs for protecting society should be given individualized consideration, which necessarily considers the way youth affects the defendant's ability to change. In addition, because it is less supportable to conclude that even a heinous crime committed by a juvenile is evidence of irretrievably depraved character, *Snow*'s focus on discipline of the wrongdoer must be viewed differently under the lens of youth. Nor can deterrence do the work in this context because the same characteristics that render juveniles less culpable than adults . . . make them less likely to consider potential punishment. *Given that youth is a mitigating factor, it will inevitably factor into* Snow*'s four considerations.* [*Boykin*, 510 Mich at 188-189 (quotation marks and citations omitted; emphasis added; second omission in original).]

Despite this additional guidance, the *Boykin* holding—that the trial courts must consider youth but need not tell us how—could "leave trial courts scratching their heads about how to conduct sentencing proceedings for juvenile defendants receiving term-of-years sentences." *People v Abbatoy* ("*Abbatoy I*"), unpublished per curiam opinion of the Court of Appeals, issued August 18, 2022 (Docket No. 357766) (BOONSTRA, J., concurring), unpub op at 3. Accordingly, we endeavor here to explain how to apply *Boykin* by way of examples and non-examples. We begin with the latter first.

## 2. TREATING YOUTH AS A STAND-ALONE FACTOR MISAPPLIES *BOYKIN*

In Abbatoy's case, the trial court denied the prosecutor's motion to consider life without the possibility of parole. The trial court then went on to sentence Abbatoy to the maximum term-of-years sentence. A review of the original sentencing transcript from June 28, 2021, reveals that the trial court discussed the horrific nature of the underlying offense and mentioned only once that the "purpose of this sentence is punishment, protection of the community, deterrence, reformation and restitution." The court then stated that it "fear[ed] for the public safety" upon Abbatoy's

release. It referenced the violent nature of the offense and the crimes Abbatoy committed before the murder of Mrs. DePalma. It then sentenced Abbatoy to serve 40-60 years with the Michigan Department of Corrections.

This Court previously reviewed that sentencing and did not find that the trial court considered Mr. Abbatoy's "youth and its attendant circumstances":

> The trial court focused almost exclusively on the horrific nature of defendant's crime, and nothing about that discussion suggested that the trial court was considering defendant's youth and its attendant circumstances.
>
> While the trial court referenced defendant's age at one point in its ruling, that reference was fleeting. The court stated:
>
>> If you—if your mother had had you 22 weeks before she did we would [not] be here today. You would have been 18 years of age and you wouldn't have had the right to a *Miller* hearing. But we are where we are. And I understand the Supreme Court had to set a dark line and that benefits some people and it doesn't benefit others.
>
> From this, it appears that the court was merely observing defendant's age, not taking defendant's youth and its attendant circumstances into consideration for purposes of sentencing defendant. Even if this conclusion is wrong, the trial court's statement certainly does not suggest that it was considering defendant's youth as a mitigating factor, as *Boykin* requires. The court was, at best, making a neutral observation about the fact that defendant's age allowed him the benefit of a *Miller* hearing.
>
> Accordingly, on the basis of our conclusions that (1) the trial court did not consider defendant's youth when sentencing defendant to a term of years under MCL 769.25 or MCL 769.25a, and (2) to any extent that the court did consider defendant's youth, it did not treat defendant's youth as a mitigating factor, we vacate the trial court's sentence and remand for resentencing in light of *Boykin*. [*Abbatoy I*, unpub op at 4-5 (citation omitted).]

This Court did not take issue with the amount of justification for the chosen sentence, but identified statements in the record that cast doubt on the trial court's understanding of and application of the law. From this Court's prior opinion, we can identify two *Boykin* principles for trial courts: (1) observing a defendant's age is not the same as considering it a mitigating factor, and (2) exclusive or near-exclusive focus on the nature of the offense can signal a misunderstanding of *Boykin*. We identify similar errors at Abbatoy's second resentencing.

At Abbatoy's 2023 resentencing, defense counsel asked the trial court to analyze the *Snow* factors on the record to clarify which of the factors were mitigating and those that were aggravating. The trial court declined, stating that it considered the *Snow* factors in 2021 and it was unnecessary for the court to restate itself. Defense counsel could not recall the trial court analyzing the *Snow* factors other than a discussion of Abbatoy's age and the brutality of the crime, and asked the court to specify the factors it was relying on when determining Abbatoy's sentence. Defense

counsel's memory served him correctly. The trial court did not analyze the *Snow* factors at the 2021 sentencing. It only mentioned protection of society and did not review reformation of Abbatoy, discipline or deterrence.

On remand in January 2023, the trial court was required to begin anew in making findings consistent with the instructions set forth in the Court of Appeals' 2022 opinion. But it did not. Again, the trial court focused primarily on the "incredibly brutal" and "horrific" nature of the crime to reinstate its earlier sentence. The record indicates the trial court treated youth as a stand-alone factor that did not impact any *Snow* factor at sentencing. The dissent identifies the error best: "the trial court specifically stated that it had weighed the mitigating factor of defendant's age *against* other factors, such as the brutality of defendant's crime." *Ante*, slip op at 3 (emphasis added). This is not a balancing test of age versus circumstances of the offense. A trial court must consider the *Snow* factors *in light of* Abbatoy's youth.

To reiterate from *Boykin*, Abbatoy's youth at the time of the offense demonstrated (1) "a greater possibility . . . that [his] character deficiencies will be reformed," (2) a diminished need to protect society given Abbatoy's "heightened capacity for change relative to adults," (3) a diminished need for disciplining Abbatoy "because it is less supportable to conclude that even a heinous crime committed by a juvenile is evidence of irretrievably depraved character" and (4) that "deterrence [cannot] do the work in this context because the same characteristics that render juveniles less culpable than adults make them less likely to consider possible punishment." *Id*. at 189 (cleaned up). Even the circumstances of the offense, albeit heinous in nature, also indicate the hallmarks of youth. *Miller* contemplates scenarios not unlike Abbatoy's: offenses by children who were physically abused and neglected, unable to extricate themselves from a violent upbringing; and offenses by children who were, at the time of the offense, under the influence of drugs. *Miller*, 567 US at 468. The *Miller* Court additionally recognizes how "peer pressures may have affected" a juvenile. *Id*. at 478. The dissent asks us not to look for ways to diminish the personal responsibility of children who commit heinous crimes, but the law requires that sentencing courts do just that.

In our view, this Court's opinion on remand in *Boykin* is analogous and instructive here. See *People v Boykin (On Remand)*, unpublished[3] per curiam opinion of the Court of Appeals, issued October 5, 2023 (Docket No. 335862), p 6 (The trial court abused its discretion and failed to comply with *Boykin* at resentencing where the court's "statements during [the] defendant's resentencing indicate that [it] did not find that [the] defendant's age made [the] murder . . . less harsh, hostile, severe, or painful, nor did it make [the] defendant's actions easier to understand or excuse. The trial court's discussion on the record suggests that the trial court did not find [the] defendant's age a factor *mitigating* the seriousness of [the] defendant's actions.") (emphasis added). In *Boykin (On Remand)*, this Court concluded that "although the trial court considered [the] defendant's age when resentencing him and considered *whether* [the] defendant's age was a mitigating factor, the trial court did not consider that [the] defendant's age *is* a mitigating factor;

---

[3] "While [unpublished] opinions are not binding precedent . . . , [this Court] may consider them as instructive or persuasive." *People v Jamison*, 292 Mich App 440, 445; 807 NW2d 427 (2011).

rather, the trial court found [the] defendant's age insufficient to mitigate his actions in murdering another teen without provocation." *Id*. at 7.

Similar to *Boykin (On Remand)*, and contrary to the trial court's base assertion otherwise, the trial court did not properly consider Abbatoy's age here. Yes, youth is mitigating and the trial court said as much. But *Boykin* expressly said that youth will factor *into* the *Snow* analysis. It did not for the trial court here. Treating youth as a stand-alone mitigating variable is improper. For this error of law, too, resentencing is warranted.

Recognizing the frustration of the "long-suffering trial courts," we now turn to an example of a proper application of the law post-*Boykin*.

### 3. EXAMPLE APPLYING *BOYKIN* THAT WAS AFFIRMED

This panel recently affirmed a 40- to 60-year sentence in *People v Stephens*, unpublished per curiam opinion of the Court of Appeals, issued April 11, 2024 (Docket No. 363446). In that sentencing transcript, the judge considered Stephens' age together with the circumstances of the offense, and the sentencing transcript highlighted factors of the offense that were not hallmarks of youth—that Mr. Stephens acted alone with "no help and no influence from anyone," had "plenty of moments of thought," and was not impulsive. The sentencing court highlighted Stephens' horrific childhood but also acknowledged his repeated dishonesty with the police and additional crimes committed following his fleeing the state of Michigan after the murder. The court considered the *Snow* factors and stated that "age certainly factors into that type of determination."[4]

Affirming the trial court's sentence, this Court ultimately concluded, on the basis of the record, that "the trial court more than adequately considered [the] defendant's youth . . . [and] gave thorough and well-reasoned consideration to [the] defendant's age as it affected the proportionality of his sentence." *Stephens*, unpub op at 5. This Court reasoned:

> At the conclusion of the *Miller* hearing in this case, the trial court found that [the] defendant was impetuous, lacking in complete growth, and impulsive in his behavior, and that he had failed to appreciate the risks or consequences of his behavior. The trial court also acknowledged [the] defendant's upbringing and home environment, including the fact that his parents were largely absent from his life, leaving him to be raised by his sickly grandmother. The trial court also discussed [the] defendant's lack of a bond with his parents and the fact that [the] defendant's childhood was characterized by bullying, substance abuse, academic struggle, trauma, and domestic violence. As for the prospect of rehabilitation, the trial court found that [the] defendant was working toward rehabilitation. . . . Further, at sentencing, the trial court discussed all four *Snow* objectives and how they impacted its sentencing decision. [*Id*.]

---

[4] These excerpts come from the actual sentencing transcript in *Stephens*, not from this Court's opinion.

The record in *Stephens* lacks the errors of law present in *Abbatoy*.[5] The *Stephens* trial court did not have an exclusive or near-exclusive focus on the nature of the offense. And the *Stephens* trial court did much more than observe Stephens' age. The sentencing court recognized that it is not the *Snow* factors and age taken separately, it is the *Snow* factors *considered together* with age as a mitigating factor. We hope to see a similar, proper application of the law from the trial court on remand and give it a second chance to demonstrate that understanding.

## C.  RESENTENCING BEFORE A DIFFERENT JUDGE

Lastly, Abbatoy argues that his resentencing should be before a different judge. We disagree.

To determine whether remand to a new judge is appropriate, this Court examines the following factors:

> (1) whether the original judge would reasonably be expected upon remand to have substantial difficulty in putting out of his or her mind previously-expressed views or findings determined to be erroneous or based on evidence that must be rejected, (2) whether reassignment is advisable to preserve the appearance of justice, and (3) whether reassignment would entail waste and duplication out of proportion to any gain in preserving the appearance of fairness. [*People v Walker*, 504 Mich 267, 285-286; 934 NW2d 727 (2019).]

While this case presents a close call, the record does not reflect that the existing judge on remand would have substantial difficulty in putting aside prior views or erroneous findings. The trial court erred a second time by not properly considering Abbatoy's youth as a mitigating factor at the second resentencing, and did so while ignoring the clear directive from this Court. The trial court's misapplication of this Court's clear "vacate and remand" holding and additional direction when previously remanding this case is indeed concerning given its effect on the perceived impartiality of the trial court. In addition to mistakes of law, there was some erroneous fact-finding. At one point, defense counsel argued:

> I don't think there is any question as to Mr. Abbatoy's rehabilitation. He is in a, and has been for over a decade, in a Level 2 facility. I—I don't want to waste the Court's time, but I hope your Honor agrees that there is nothing in the rehabilitation factor, other than mitigation and how Mr. Abbatoy has conducted himself.

The trial court disagreed, stating that Abbatoy was placed in a Level II facility, not the lowest possible Level I facility. The court stated that it was "inaccurate" to say Level II was "effectively

---

[5] We acknowledge that the trial court here did conduct a *Miller* hearing. And as our Supreme Court said in *Boykin*, there is "no requirement for an on-the-record articulation of how youth or the *Miller* factors affected a sentence in our caselaw." *Boykin*, 510 Mich at 192. To the extent revisiting some of those findings would illuminate the *Snow* factors, though, as they did in *Stephens*, a trial court may articulate them once more. As the concurring opinion observes, less is not necessarily more.

-10-

the lowest [possible security-]level [available to Abbatoy] short of being [released]." But it was the State's own expert who offered at the *Miller* hearing that "Level II is probably the lowest you can go [here] without being released from prison."

Still, and particularly when we compare the record here to cases where appellate courts have deemed a new judge warranted, there is no clear evidence that this mistake was purposeful or a result of bias. *See generally, People v Dixon-Bey*, 340 Mich App 292, 303-304; 985 NW2d 904 (2022); *People v Walker*, 504 Mich 267, 285; 934 NW2d 727 (2019). We also acknowledge that resentencing before a new judge will entail significant time and effort, particularly given the age and length of the record here. As this opinion indicates, and contrary to the dissent's concern, this is an incredibly factually-intensive review *unique to Abbatoy*. Accordingly, Abbatoy has not established that he should be resentenced before a different judge.

## IV. CONCLUSION

Abbatoy's sentence is vacated and this matter is remanded to the trial court for resentencing consistent with this opinion. We do not retain jurisdiction.

/s/ Adrienne N. Young

-11-